WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William U. Thompson, | No. CV-13-02437-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Property & Casualty Insurance Company of Hartford, | |
| Defendant. | |

Pending before the Court is Property & Casualty Insurance Company of Hartford ("Hartford")'s Motion for Summary Judgment. (Doc. 53). The motion is in response to William U. Thompson ("Plaintiff")'s suit for breach of contract after Hartford refused to honor a homeowner's insurance policy (the "Policy") claim following an alleged burglary of Plaintiff's Scottsdale, Arizona residence. The Court now rules on the motion.

## I.     Background

Prior to addressing Hartford's motion, a recitation of the facts underlying the matter is necessary. In the interest of clarity and consistency, the Court will reproduce in full the factual discussion from its March 30, 2015, Order (Doc. 55):

Hartford issued a homeowners insurance policy (the "Policy") to Plaintiff for the period of February 9, 2009 through February 9, 2010. The Policy excludes coverage for an insured who before or after a loss "(1) intentionally concealed or misrepresented any material fact or

circumstance; (2) made false statements of fact which, if known to Hartford, would have caused Hartford not to issue the policy; or (3) engaged in fraudulent conduct relating to the insurance." (Doc. 25 ¶ 2).

Plaintiff claimed his home was burglarized between July 24, 2009 and July 31, 2009. He reported the burglary to the Scottsdale Police Department, estimating the value of his stolen items to be approximately $40,000. In August 2009, Plaintiff submitted a claim to Hartford for his alleged loss, and on October 21, 2009, Hartford received Plaintiff's proof of loss, which listed 465 items that Plaintiff claimed were stolen from his home. Plaintiff valued his loss at $211,189.

When Hartford investigated Plaintiff's claim, it learned that Plaintiff had made at least ten prior insurance claims, including five prior burglary claims at the same residence. Hartford obtained a recorded statement from Plaintiff. Hartford also took Plaintiff's Examination under Oath ("EUO"). During the EUO, Plaintiff testified to losses that increased the value of his claim to between $353,189 to $463,149.

On May 3, 2011, Hartford sent Plaintiff's attorney a letter in which Hartford stated, in part:

We have now completed our investigation and we have determined that there is no coverage under Mr. Thompson's Property & Casualty Insurance Company of Hartford ("Hartford") policy. (Doc. 25-1 at 156).

The letter then extensively detailed the factual circumstances surrounding Hartford's determination of no coverage. (*Id.* at 157-69). Finally, the letter concluded:

"Based upon our investigation, as noted above, we have determined that Mr. Thompson intentionally concealed or misrepresented material facts and circumstances regarding his claim and therefore coverage under his policy is denied.

If you believe that Hartford has erred in any way in its investigation or analysis, please let us know and we will be happy to consider your position. If you or Mr. Thompson believes you or Mr. Thompson have any other facts or

information which would assist us in this matter and cause further consideration, please forward such materials at your earliest convenience and we will consider same. Should you and/or Mr. Thompson feel that Harford's decision is based upon incomplete or inaccurate information, please contact me to discuss the matter further. If any changes occur in the circumstances of this matter, please notify us immediately. All rights, terms, conditions and exclusions of the policy remain in full force and effect and are completely reserved.

There may be other reasons why coverage does not apply and Hartford does not waive its right to contest or deny coverage for any other valid reason that may arise or is later discovered. Hartford reserves the right to bring a declaratory judgment action or other legal action to determine its duties, including, but limited to, whether coverage is, in fact, available under the policy." (*Id.* at 169-70).

Plaintiff's counsel wrote to Hartford to ask for a revised decision, indicating that "[m]y client does not accept the decision from your client" and "there is no basis for the Hartford to deny the claim based on intentional concealment or misrepresentation of material facts and circumstances regarding the claim." (*Id.* at 181, 183). On September 11, 2012, Hartford sent Plaintiff's counsel a letter in which Hartford concluded that "we have determined that Mr. Thompson intentionally concealed or misrepresented material facts and circumstances regarding his claim and therefore coverage under his policy is denied." (*Id.* at 154). Like the first letter, this second letter also stated that Hartford would be happy to consider Plaintiff's position if Plaintiff believed Hartford had erred in its investigation or analysis. (*Id.*)

On October 29, 2013, Plaintiff filed this lawsuit against Hartford for breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing (i.e. bad faith).

(Doc. 55 at 1-3). On August 8, 2014, Hartford filed a motion for summary judgment on Plaintiff's claim of bad faith. (Doc. 24). On March 30, 2015, this Court granted Hartford's motion, concluding that the claim was time-barred, as Plaintiff failed to file

1   suit within the two-year statute of limitations. (Doc. 55 at 5-6). On May 15, 2015,
2   Hartford filed the pending motion, which seeks summary judgment on Plaintiff's
3   remaining claims for breach of contract and unjust enrichment, as well as on Hartford's
4   counterclaim against Plaintiff for fraud. (Doc. 53). Having set forth the pertinent factual
5   and procedural background, the Court turns to Hartford's motion.

6

7                            **II.    Legal Standard**

8          Summary judgment is appropriate when "the movant shows that there is no
9   genuine dispute as to any material fact and the movant is entitled to judgment as a matter
10  of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely
11  disputed must support that assertion by . . . citing to particular parts of materials in the
12  record, including depositions, documents, electronically stored information, affidavits, or
13  declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by
14  "showing that the materials cited do not establish the absence or presence of a genuine
15  dispute, or that an adverse party cannot produce admissible evidence to support the fact."
16  Rule 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to
17  make a showing sufficient to establish the existence of an element essential to that party's
18  case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*
19  *Catrett*, 477 U.S. 317, 322 (1986).

20         Initially, the movant bears the burden of pointing out to the Court the basis for the
21  motion and the elements of the causes of action upon which the non-movant will be
22  unable to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The
23  burden then shifts to the non-movant to establish the existence of material fact. *Id.* The
24  non-movant "must do more than simply show that there is some metaphysical doubt as to
25  the material facts" by "com[ing] forward with 'specific facts showing that there is a
26  *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
27  574, 586–87 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e) (1963)
28  (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. But in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Summary judgment is generally disfavored when the motion presents issues of a party's "motives and intent." *Continental Maritime of San Francisco*, *Inc. v. Pacific Coast Metal Trades Dist. Council*, *etc.*, 817 F.2d 1391, 1393 (9th Cir. 1987) (citing *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473 (1963)). Nonetheless, it "may be granted where 'the non-moving party does not show any genuine issue of material fact and does not present an adequate record to support a finding in his favor.'" *Id.* (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 (9th Cir. 1986)).

### III.    The Parties' Evidentiary Disputes

Prior to addressing the merits of Hartford's motion, the Court must resolve two evidentiary disputes that bear on the Court's analysis: (1) Hartford's introduction of statements from an unavailable witness; and (2) Plaintiff's affidavit.

**A. Mr. Elek's Transcribed Statements**

On October 4, 2010, during Hartford's investigation of Plaintiff's insurance claim, Hartford sent "Detective" James L. Peters—described as an "investigator"—to interview Les Elek, the owner of Rose Jewelers. (Doc. 54-3 at 54). Hartford sought to ask Mr. Elek about a transaction he conducted with Plaintiff some fifteen years ago, where Mr. Elek allegedly sold Plaintiff two crystal chandeliers worth approximately $30,000 each. In the transcribed interview between Mr. Elek and Detective Peters, Mr. Elek explicitly stated that he sold Plaintiff "[j]ust" a single chandelier and that Plaintiff "only bought one." (*Id.* at 56). Mr. Elek elaborated that at the time, he only had two chandeliers in his store, and

1   after he sold Plaintiff a single Waterford chandelier, the second chandelier was then
2   "stored for a number of years" because Mr. Elek "couldn't sell it." (*Id.* at 55). He went on
3   to state that the second chandelier was currently in storage at his ex-wife's residence. (*Id.*
4   at 56-57). In addition to the number of chandeliers he sold to Plaintiff, Mr. Elek also
5   recalled that the one chandelier Plaintiff purchased was "worth probably close to $10,000
6   or more." (*Id.* at 55-56). On October 25, 2013, Mr. Elek passed away, foreclosing any
7   possibility that he appear at trial as a witness. (*Id.* at 81).

8   　　　Plaintiff argues that the entirety of Mr. Elek's transcribed interview is
9   "inadmissible hearsay." (Doc. 58 at 5). Hartford, expectedly, takes the opposite position.
10  "At the summary judgment stage," the Court does "not focus on the admissibility of the
11  evidence's form," but rather focuses on "the admissibility of its contents." *Fraser v.*
12  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted); *see also Block v. City of*
13  *Los Angeles*, 253 F.3d 40, 418-19 (9th Cir. 2001) (noting that "[t]o survive summary
14  judgment, a party does not necessarily have to produce evidence in a form that would be
15  admissible at trial, as long as the party satisfies the requirements of [Rule 56]"). The
16  Ninth Circuit has required, however, that evidence offered in support of a motion for
17  summary judgment be admissible both in form and in content. *Rosa v. TASER Int'l*, 684
18  F.3d 941, 948 (9th Cir. 2012) (citation omitted); *Beyene v. Coleman Sec. Services, Inc.*,
19  854 F.2d 1179, 1181 (9th Cir. 1988) (citation omitted); *Canada v. Blains Helicopters,*
20  *Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Hartford argues that the statements may come in
21  under either Fed. R. Evid. 803(6)(B) (the "business records" exception) or Fed. R. Evid.
22  807(a) (the "residual" exception). (Doc. 60 at 6-7). After careful consideration, the Court
23  concludes that the statements may be admitted under Rule 807(a).[1]

24
25  　　　[1] The Court assumes without deciding that the statements would not be admissible
26  under Rule 803(6)(B). Although Hartford describes Peters as an "investigator," (Doc. 53
    at 6), he appears in the record as a "Detective." (Doc. 54-3 at 54-60). Hartford
27  acknowledges as much by arguing that the "police record" created by Peters is admissible
    as a "business record." (Doc. 60 at 6). Neither the record nor Hartford's briefs elaborate
28  on what type of law enforcement officer Peters is, what role he had with respect to
    Hartford's investigation, and why a law enforcement officer conducted the interview with
    Mr. Elek. Moreover, Hartford acknowledges that the investigation of Plaintiff's claim
    was referred to its "Special Investigation Unit" and turned up several "red flags." (Doc.

Fed. R. Evid. 807(a) establishes that where an out-of-court statement "is not specifically covered by a hearsay exception in Rule 803 or 804," the Court may nonetheless admit it when: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."[2] The Ninth Circuit has declined to interpret this exception narrowly, stating that Rule 807 "exists to provide courts with flexibility in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions." *United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) (rebuffing the argument that the "hearsay exception must be interpreted narrowly" and declining "invitation to go skipping down the yellowbrick road of legislative history"). Although the admission of evidence is committed to the Court's discretion, *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712-13 (9th Cir. 1992) (citation omitted), the Court "must make detailed findings when admitting evidence under [Rule 807]." *FTC v. Figgie Int'l*, 994 F.2d 595, 608 (9th Cir. 1993); *see also Mutuelles Unies*, 957 F.2d at 713.

---

53 at 6). Hartford has offered no evidence to support its claim that an interview of this nature "was kept in the course of [this] regularly conducted business activity" and that the "record was a regular practice." Rule 803(6)(b). In support of its argument that police records constitute a business record, Hartford cites *United States v. Smith*, 521 F.2d 957, 962-64 (D.C. Cir. 1975), which the Court finds to be inapposite. *Smith* concerned the admissibility of a police report created by the officer who received the initial criminal complaint, and the transcript of subsequent police radio broadcasts. *Id.* at 962-64. Moreover, the *Smith* panel explicitly stated that "'[w]e do not hold that a police record is admissible in a criminal proceeding as a business record, either as substantive evidence or for impeachment purposes . . . .'" *Id.* at 965. Rather, "such a record is so admissible *when offered by a criminal defendant to support his defense.*" *Id.* (emphasis in original). While the *Smith* panel pointed to decisions from "at least five other circuits" that "have found that a police record constitutes business record within the meaning of [Title 28 U.S.C. § 1732 (2012)]," *id.* at 963, the Court declines to treat *Smith* as controlling.

[2] Rule 807(b) mandates that prior to a "trial or hearing," the proponent of the statement must give the "adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." The Court concludes that Hartford has met its burden. Hartford invoked Rule 807(a) in its reply to Plaintiff's opposition, filed on May 15, 2015, (Doc. 60 at 6-7), four months prior to oral argument. Moreover, Hartford asserts—and Plaintiff does not contest—that it "provided [Plaintiff] with notice of its intent to offer the owner's statement through [Hartford's] disclosure statements." (*Id.* at 8).

The Court finds that Mr. Elek's statements have been offered as evidence of a material fact. Hartford denied Plaintiff coverage for his loss, in part, because Plaintiff intentionally misrepresented to Hartford the number of chandeliers he owned and whether one was stolen from his residence. Hartford's investigators testified that this misrepresentation was material to their investigation, (Doc. 54-3 at 45, 76, 77-79), and Plaintiff failed to contest their assertions. Moreover, the evidence offered directly contradicts Plaintiff's factual assertions, and it is plain that intentionally misrepresenting ownership and loss of a $30,000 chandelier to an insurance company to collect a payout is material in the insurance context.

Progressing in the inquiry, the Court finds that the statements are "more probative on the point" than any other evidence that could be obtained by Hartford "through reasonable efforts." Mr. Elek is deceased and cannot be called as a witness. To date, Plaintiff has failed to produce any documentary evidence[3] to support his assertion that he

---

[3] Plaintiff argues that the record includes a copy of a written receipt from Rose Jewelers showing the purchase of two chandeliers from Mr. Elek for $6,500. (Doc. 58 at 6). "Before the 2010 amendments to the Federal Rules of Civil Procedure, Rule 56 arguably required that all documents submitted to support or oppose a summary judgment be authenticated." *Kelley v. Speciale*, 2013 Bankr. LEXIS 3285, at *5 (Bankr. M.D. Ga. July 2, 2013); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."). The drafters of the Rule 56 amendments made it "clear" that they "intended to make summary judgment practice conform to procedure at trial." *ForeWord Magazine Inc. v. OverDrive Inc.*, 2011 U.S. Dist. LEXIS 125373, at *5 (W.D. Mich. Oct. 31, 2011). Thus, the amended Rule 56 created "a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method for doing so at trial." *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1321 (D. N.M. 2012) (citation omitted). While the Court is not aware of an opinion in which the Ninth Circuit elected to follow the *ForeWord* court's interpretation of the amended Rule 56, *cf. We Are Am. v. Maricopa County Bd. of Supervisors*, 297 F.R.D. 373, 379 (D. Ariz. 2013) (citation omitted) (noting that the "Ninth Circuit has 'repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment'"), the Court is persuaded by *Foreword*'s thorough and well-reasoned analysis, and elects to follow it here. Plaintiff first offered this alleged receipt in an email to Hartford on February 25, 2015. (Doc. 54-3 at 86). Hartford then lodged an objection to the receipt in its motion for summary judgment, arguing that it was "untimely and unauthenticated." (Doc. 53 at 9). Aware of Hartford's objection, Plaintiff failed to attest to the authenticity of the documentary evidence; Plaintiff's affidavit merely stated that "[Plaintiff] provided a receipt for the purchase of the chandeliers from Les Elek to Hartford." (Doc. 59 at 2). This conclusory statement is insufficient under Fed. R. Evid. 901(b)(1) and Plaintiff failed to "thoroughly explain" how he would authenticate the documentary evidence at trial. *Mitchell*, 842 F. Supp. 2d at 1321.

purchased two chandeliers from Mr. Elek. There are no business records from Mr. Elek's estate to verify the transaction, as he only kept records for "about five years after [he] closed" the store, in accordance with his accountant's recommendation. (Doc. 54-3 at 59). And Mr. Elek did not disclose whether any other persons had knowledge of the chandelier transaction conducted almost twenty years ago. It follows that the most probative evidence of the transaction Hartford could reasonably obtain was Mr. Elek's personal recollection captured in statements made to Detective Peters.

The Court also finds that admitting the statements will "serve the purposes of these rules and the interests of justice." Hartford's position is that it declined to provide Plaintiff coverage, in part, because he intentionally misrepresented the material fact that he had a chandelier worth $30,000 stolen from his home. (Doc. 54-1 at 91-92). Mr. Elek passed away in October, 2015. Plaintiff filed suit less than one week after Mr. Elek's death,[4] and Plaintiff produced an affidavit attesting to the fact that he purchased two chandeliers. (Doc. 59-1 at 3). The only individual who could contest this attestation is unavailable, and the only means Hartford has to put evidence before the trier of fact is to proffer a transcript of the statements. The evidence will directly aid the trier of fact in resolving a disputed material fact—which is in the interests of justice—and it "furthers

---

Moreover, the Court notes that Plaintiff failed to follow proper procedure to admit the receipt. "The authentication of a document requires 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (citation omitted) "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent 'witness who wrote the document, signed it, used it, or saw others do so'" *Id.* at 533 (emphasis in original) (citation omitted) Although "the requirement that documents are authenticated through personal knowledge when submitted in a summary judgment motion 'is limited to situations where exhibits are introduced by being attached to an affidavit'" *id.* at 533, it is clear from the record that Plaintiff has "relied upon" his personal knowledge to authenticate the document, and the Court need not "consider alternative means of authentication under Federal Rules of Evidence 901(b)(4)." *Id.* (citation omitted) Plaintiff failed to follow the procedure set forth by the Federal Rules of Evidence and this Circuit's case law. For these reasons, the Court did not consider the alleged receipt for the purchase of the two chandeliers in its analysis.

[4] The Court does not insinuate ill motives on the part of Plaintiff due to the timing of his suit. The Court merely mentions the fact to illustrate the point that Hartford's witness—and sole source of evidence—passed away before Plaintiff filed suit.

1  the federal rules' paramount goal of making relevant evidence admissible." *Figgie Int'l*,

2  994 F.2d at 609 (citation omitted). The proffered evidence satisfies this element of Rule

3  807(a).

4        The Court's analysis continues, however. The "most important inquiry under this

5  Rule is whether the proffered evidence has trustworthiness equivalent to that of the

6  enumerated hearsay exceptions." *Figgie Int'l*, 994 F.2d at 608 (citing *Larez v. City of Los*

7  *Angeles*, 946 F.2d 630, 642 (9th Cir. 1991)). The Court acknowledges that it is a close

8  call as to whether the statements "contain the requisite guarantees of trustworthiness

9  required for admission . . . ." *United States v. Angulo*, 4 F.3d 843, 845 n.2 (9th Cir. 1993).

10  The statements "were not made 'under oath and subject to the penalty of perjury' nor

11  were they recorded in any way 'which would allow the judge an opportunity to view [his]

12  demeanor.'" *Van Zandt v. Mbunda*, 604 Fed. Appx. 552, 555 (9th Cir. 2015) (quoting

13  *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998)). These circumstances

14  cut against a finding of trustworthiness.

15        But "the declarant's perception, memory, narration, [and] sincerity concerning the

16  matter asserted" support a finding of equivalent trustworthiness. *Valdez-Soto*, 31 F.3d at

17  1471 (citation omitted). The interview transcript establishes that Mr. Elek understood

18  Detective Peters' questions clearly and recalled the details of the transaction with ease

19  and clarity, noting that the chandeliers he kept at Rose Jewelers were both expensive and

20  "pretty special item[s]." (Doc. 54-3 at 58). Importantly, Mr. Elek was certain as to the

21  number of chandeliers that he sold Plaintiff. He noted that Plaintiff "was a fine

22  gentleman," who most likely "paid in cash," and unequivocally stated that Plaintiff

23  bought "only" "one" chandelier. (*Id.* at 55-58). Mr. Elek further supported his claim with

24  current, detailed information, telling Detective Peters that he still owned the second

25  chandelier, and that it was currently in storage at his ex-wife's residence. Mr. Elek's

26  statements were detailed, specific, clear, and they directly contradicted Plaintiff's

27  attestation. *See Van Zandt*, 604 Fed. Appx. at 555 (taking into account a proffered

28  statement's "lack of detail"). Moreover, the statements were made "voluntarily based on

facts within [his] personal knowledge." *United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012). Finally, the record contains absolutely no evidence that Mr. Elek had "motive to lie" about the chandelier transaction or his business relationship with Plaintiff. *Figgie Int'l*, 994 F.2d at 608 (noting that a declarant's lack of motive to lie supported a finding of "circumstantial guarantees of trustworthiness"); *see also United States v. George*, 960 F.2d 97, 100 (9th Cir. 1992) (concluding that a declarant's statement had "particularized guarantees of trustworthiness" primarily because "there was no motive for the victim to lie"). For these reasons, the Court finds that Mr. Elek's statements—although not made under oath or subject to perjury—possess the "particularized guarantees of trustworthiness" necessary for their admission.

Based on the aforementioned reasons, the Court concludes that the entirety of Mr. Elek's transcribed statements is admissible under Rule 807(a).

**B.     Plaintiff's Affidavit**

The parties' second evidentiary dispute involves an affidavit filed by Plaintiff on April 27, 2015. (Doc. 59-1 at 2-4). This affidavit forms the backbone of evidence Plaintiff marshaled in opposition to Hartford's motion for summary judgment. Hartford implores the Court to ignore the affidavit, arguing that it is "self-serving and conclusory," a "sham," and "insufficient to create a genuine issue of material fact." (Doc. 60 at 9-10). Generally, "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993); *see also Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Nonetheless, the decision to discard a party's affidavit "'should be applied with caution' because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)).

Plaintiff's affidavit is scant in terms of "detailed facts and . . . supporting evidence . . . to create a genuine issue of material fact." *Fed. Trade Comm'n*, 104 F.3d at 1171. But the affidavit does articulate particular facts to refute at least some of the material misrepresentations Hartford alleged. For example, Plaintiff attests to having bought two chandeliers from Mr. Elek in the 1990s, when Mr. Elek was relocating his business. (Doc. 59-1 at 3). Plaintiff elaborates that he and Mr. Elek personally removed the chandeliers from the store. (*Id.*). Further, Plaintiff attests that he was mistaken about the origins of the "Crumbo" watercolor paintings, and elaborates that he may have mistakenly informed Hartford's investigators that he purchased the Crumbos from the Heard Museum because Plaintiff still had in his possession "other, similar, paintings" that he purchased from the Heard Museum, which would bolster Plaintiff's argument that his misrepresentations were not intentional. The Court declines to recite additional specifics from Plaintiff's affidavit. Rather, the cited examples serve to illustrate the Court's finding that the affidavit, albeit barely, presents more than "conclusory allegations unsupported by factual data." *Hansen*, 7 F.3d at 138.

Hartford further argues that Plaintiff's affidavit contradicts prior sworn testimony, and asks the Court to reject the affidavit on that ground. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (noting that the "general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"). Hartford directs the Court to Plaintiff's deposition, in which Plaintiff pointed to a photograph placed before him and testified that a "full-size wrought iron bed had been stolen in the alleged July 2009, burglary."[5] (Doc. 60 at 9). The photograph in question, however, had been taken by one of Hartford's investigators five months after the alleged break-in occurred. (*Id.*). Hartford plausibly argues "that there was no way the bed frame could have been stolen and still appeared in the photo," and thus Plaintiff's affidavit clearly contradicts prior sworn testimony. The Court disagrees.

---

[5] Plaintiff's claimed losses included six wrought iron bed frames worth a total of $3,400. (Doc. 54-2 at 77).

Plaintiff's affidavit acknowledges that "[t]he iron bed frame depicted in a picture from a Hartford investigator is, in fact, in my garage." (Doc 59-1 at 3). Plaintiff asserts that "[h]owever, the remainder of the bed was taken in the burglary, rendering the remaining portion of the bedframe virtually worthless." (*Id*.). The Court acknowledges that this too is a close call. Plaintiff's affidavit does not directly contradict his prior sworn testimony (rather it provides further explanation for an answer). *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 855 (N.D. Cal. 2011) (citing *Messick v. Horizon Indus.*, *Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995)) (noting that a "declaration that contradicts earlier sworn testimony will not be considered a sham when it is offered to elaborate, explain, or clarify earlier deposition testimony in the context of an honest discrepancy, mistake, or newly discovered evidence"). But the affidavit fails to provide much in the form of any substantive explanation as to why Plaintiff believed the photograph to be a visual representation from *before* the alleged robbery, why Plaintiff stated to investigators that a wrought iron frame had been stolen but then claimed four frames as having been stolen, and why he failed to inform Hartford at the time that certain pieces of the bed frames had been stolen, but some remained. Despite the discrepancies, the Court finds that Plaintiff's affidavit does not directly contradict his prior sworn testimony, and a rational tried of fact could find Plaintiff to be credible.

The Court again notes that the affidavit in question is brief, it offers few "detailed facts" and little "supporting evidence." But the Court is not prepared to simply discard it outright, as in doing so, the Court would be rendering a credibility determination—an act it is prohibited from undertaking. *Yeager*, 693 F.3d at 1080. The Court will therefore consider Plaintiff's affidavit as part of the record. *See United States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 (9th Cir. 1990) (considering in a motion for summary judgment the non-moving party's affidavit that while "hardly overwhelming," presented evidence "that a rational trier of fact could find to be credible").

Having resolved the parties' evidentiary disputes, the Court now turns to the merits of Hartford's motion.

1

2          **IV.    Hartford's Motion for Summary Judgment**

3          Hartford moves for summary judgment on three claims: (1) Plaintiff's breach of

4   contract claim against Hartford for refusing to cover Plaintiff's losses resulting from the

5   alleged break-in; (2) Plaintiff's alternative claim of unjust enrichment; and (3) Hartford's

6   counterclaim of fraud. The Court will address each in turn.

7

8          **(A.) Plaintiff's Breach of Contract Claim**

9          The underlying dispute that generated the this litigation centers on Hartford's

10  refusal to cover a homeowner's insurance policy claim filed by Plaintiff that sought

11  $177,750, the maximum payout authorized under the Policy. (Doc. 54 at 1). Following

12  Hartford's refusal to cover his losses, Plaintiff filed suit alleging, among other claims,

13  breach of contract. It is black-letter law that to prevail in this matter, Plaintiff must

14  establish that a contract existed, breach occurred, and that there was resulting damage.

15  *Dialog4 Sys. Eng'g GmbH v. Circuit Research Labs, Inc.*, 622 F. Supp. 2d 814, 820 (D.

16  Ariz. 2009) (citation omitted). Hartford acknowledges that a valid contract exists. (Doc.

17  53 at 4; Doc. 54 at 1). The Court therefore focuses on whether Hartford is entitled to

18  judgment as a matter of law with respect to breach.

19         Hartford contends that no breach occurred because it denied coverage pursuant to

20  Section Q of the Policy (the "Concealment or Fraud" provision), which establishes that

21  Hartford will provide no coverage to "'insureds' under this policy if, whether before or

22  after a loss, an 'insured' has . . . intentionally concealed or misrepresented any material

23  fact or circumstance . . . [m]ade false statements of fact which, if known to [Hartford],

24  would have caused [Hartford] not to issue the policy; or . . . [e]ngaged in fraudulent

25  conduct relating to this insurance." (Doc. 54 at 2). Hartford argues that Plaintiff

26  "intentionally   concealed   or   misrepresented   [a   number   of]   material[6]   facts   and

27
_____

28         [6] The Court notes that after carefully reviewing the record, the parties' briefs, and
    oral argument on the pending motion, it has identified no instance where Plaintiff
    contested the materiality of the alleged intentional misrepresentations. Moreover, the

circumstances regarding his claim . . . ." (Doc. 54-1 at 96). Specifically, Hartford identified six alleged material concealments or misrepresentations:   (1) Plaintiff concealed the fact that his Scottsdale residence had been burglarized an additional four times; (Doc. 53 at 7); (2) Plaintiff misrepresented the number of crystal chandeliers that he owned and their value; (*Id.* at 8); (3) Plaintiff misrepresented the amount of personal property that was stolen from him in prior burglaries; (*Id.*); (4) Plaintiff misrepresented the value and origins of three "Crumbo" watercolor paintings; (*Id.*); (5) Plaintiff misrepresented six stolen wrought iron beds worth $3,400; (*Id.* at 8); and (6) Plaintiff misrepresented the loss of eight "duplicate" figurines that were previously claimed as stolen by either Plaintiff or Plaintiff's brother. (*Id.*).[7]

Having thoroughly reviewed the parties' briefs, the record, and having considered oral argument, the Court concludes that insufficient evidence exists in the record to create a genuine dispute with respect to the material factual allegation that Plaintiff intentionally misrepresented to Hartford eight duplicate figurines as having been stolen. Accordingly, Hartford is entitled to summary judgment on Plaintiff's breach of contract claim. The Court's analysis follows.[8]

---

record itself does not create a genuine dispute with respect to materiality. Thus, the Court considers materiality to be undisputed. *Heinemann v. Satteberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2)) (concluding that under the recently revised Rule 56 courts may treat an "opposing party's failure to respond to a fact asserted in the motion" as "undisputed for purposes of the motion"). Hartford must establish that an intentional misrepresentation or concealment occurred.

[7] Hartford's motion discusses Plaintiff's claim that he "inherited many expensive tools . . . from his brother Mike, who passed away." (Doc. 53 at 9). Hartford's Letter of Denial, however, did not assert that it was refusing to insure Plaintiff's claim on this basis, and the Court will not treat it as an alleged material misrepresentation made by Plaintiff.

[8] Due to the fact that Hartford is entitled to summary judgment based on Plaintiff's intentional misrepresentation of eight stolen figurines, the Court need not set forth in full its analysis of Hartford's additional claimed concealments or misrepresentations. However, brief notation is necessary. The Court concludes that with respect to each of the additional alleged misrepresentations or concealments, genuine issues of material fact exist that would necessitate trial to resolve. The Court notes that the record Plaintiff presented in support of his opposition is scant. Nonetheless, with respect to whether Plaintiff intentionally concealed the prior burglaries of his Scottsdale residence, a genuine dispute exists as to Plaintiff's intent. Further, a genuine dispute exists as to whether Plaintiff misrepresented the number of chandeliers he purchased from Mr. Elek. A

1

2          *i. Plaintiff's Duplicate Claims*

3          Hartford alleged in both its Letter of Denial and brief, (Doc. 54-1 at 93; Doc. 53),

4   that Plaintiff claimed as stolen a number of duplicate items that had either been

5   previously claimed as stolen by Plaintiff or Plaintiff's brother. Specifically, Hartford

6   focused on eight figurines that were duplicates: four were figurines that Plaintiff himself

7   claimed in prior losses, and four were figures that were claimed by his brother, Robin

8   Thompson, in a December 21, 2008 loss. (Doc. 54-1 at 92-93). Patricia Kratzke—

9   Hartford's investigator—characterized the claim as "almost too coincidental." (Doc. 54-3

10  at 41). Plaintiff then failed to present Hartford with any evidence to establish ownership

11  of or proof of purchase for the eight figurines in question during the investigation.[9]

12  Hartford proceeded to deny Plaintiff's claim, in part, based on its conclusion that Plaintiff

13  "claimed numerous items [that] were allegedly stolen in the July 31, 2009 theft that had

14  also been claimed in prior losses." (Doc. 54-1 at 95). Hartford's Letter of Denial

15  expressly listed and described each of the eight duplicate figurines. (*Id.* at 93).

16         At this point, Plaintiff was aware that his insurance claim was denied, in part,

17  because Hartford concluded that Plaintiff had intentionally misrepresented $16,990 worth

18  of figurines stolen from his Scottsdale residence. (Doc. 54-1 at 93). Plaintiff protested

19  Hartford's claim denial through counsel, asserting that he "does not accept the decision

20  from your client," and that "there is no basis for . . . Hartford to deny the claim." (Doc.

21  25-1 at 181, 183). Plaintiff, however, failed to address at any length the allegation that he

22  misrepresented the loss of eight figurines worth $16,990. Plaintiff's letter to Hartford

23

---

24  genuine dispute also exists with respect to whether Plaintiff intended to misrepresent to
    Hartford the amount of personal property he had stolen in prior burglaries. The Court also

25  concludes that Hartford has not presented sufficient evidence to warrant summary
    judgment on the allegation that Plaintiff misrepresented the origins and value of the three

26  "Crumbo" watercolor paintings. Finally, the Court concludes that Plaintiff's affidavit
    creates a genuine dispute with respect to whether he intentionally misrepresented the loss

27  of $3,400 in wrought iron bed frames.

28         [9] Hartford's Letter of Denial noted that "there is not one piece of supporting
    documentation for any of the claimed figurines, no receipts, canceled checks, credit card
    receipts, manuals, appraisals, boxes, etc." (Doc. 54-1 at 93).

only contested (in a cursory manner) Hartford's allegation that Plaintiff had claimed as stolen a number of duplicate tools. (*Id.* at 183). Plaintiff alluded to there being "pictures documenting a great deal of items" that were stolen, including a "disc with pictures of the stolen items and some owner's manuals for tools," as well as a "photocopy of the disc itself." (*Id.* at 182-83). None of this alleged evidence was offered, and the record establishes that Plaintiff presented no evidence during the pre-litigation dispute with Hartford to contest Hartford's allegation that Plaintiff intentionally misrepresented the loss of these figurines.

This trend has continued through litigation of the matter. To date, Plaintiff has failed to present any evidence—or raise any substantive argument—in opposition to Hartford's allegation that Plaintiff intentionally misrepresented $16,990 worth of lost figurines that had been previously claimed as stolen.[10] Plaintiff's makes the fleeting argument that these alleged duplicate items simply "include a shop vac, skilsaw and a spray gun, all of which are easily replaceable by anyone shopping at a Home Depot," and that with respect to the "other alleged duplicate items," they are simply "mass produced figurines which, although somewhat uncommon, would be readily available and attainable by a person in Thompson's profession."[11] (Doc. 58 at 4). This assertion, standing alone, is insufficient.

Similarly, the Court's independent review of the record—drawing all justifiable inferences in Plaintiff's favor—leads it to conclude that Plaintiff has failed to raise a genuine issue with respect to the duplicate figurines that requires trial "to resolve the parties' differing versions of the truth." *T.W. Electrical Service*, *Inc. v. Pacific Electrical*

---

[10] The Court does not believe that Plaintiff's opposing argument—brief as it may be—rises to the level of "failure to respond to a fact asserted," and the Court may not treat it as "undisputed for purposes of the motion." *Heinemann*, 731 F.3d at 917 (citation omitted). Therefore, the Court must make "all justifiable inferences" in Plaintiff's favor and determine whether a genuine dispute exists with respect to this material fact. *Hopper v. City of Pasco*, 241 F.3d 1067, 1087 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).

[11] Plaintiff argues separately that "[m]ost, if not all, of the items claimed by [Plaintiff] have been identified by him via pictures, manuals, or independently verified by third parties." (Doc. 58 at 7). This statement is not supported by the record.

*Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citation omitted). Beyond Plaintiff's superficial, implicit argument, the Court cannot locate (and Plaintiff failed to point to) anything in the record to dispute Hartford's allegation that Plaintiff intentionally misrepresented the loss of $16,990 worth of figurines. Plaintiff's recorded statement, his EUO, and his deposition all lack discussion or testimony on the issue of duplicate figurines.[12] Plaintiff's affidavit also failed to mention or address this allegation at any length. The Court finds this noteworthy for two reasons: (1) at the time Plaintiff filed his affidavit, he was aware that Hartford had denied his claim, in part, on the conclusion that Plaintiff had claimed $16,990 in duplicate figurines; and (2) Plaintiff addressed in his affidavit a number of other specific factual allegations asserted by Hartford as grounds for refusal to provide coverage.

Moreover, Plaintiff's statements to Hartford's investigators do not support his argument. Plaintiff told Ms. Kratzke that "all of the Royal Doulton dogs [were] inherited from his grandfather 40 [years] ago and the remaining Lladro and Royal Doulton [figurines] he obtained from his father between 12 – 30 years ago when his father would travel overseas as a pilot . . ." (Doc. 54-3 at 5). Hartford identified at least one Royal Doulton dog, three other Royal Doulton figurines, and three Lladro figurines that had been claimed as stolen in 2003 and 2008. (Doc. 54-1 at 92-93). Yet Plaintiff testified during his EUO that he owned "some Doultons" and "some Lladros" that "were all broken" in the 2003 Flagstaff break-in. (Doc. 54-3 at 13). Plaintiff never disclosed to Hartford's investigators when or how these figurines were replaced. (*Id.* at 41). During Plaintiff's deposition, he testified that his dad "bought the first ones" that "were stolen" and then that Plaintiff "bought the second batch" which were the figurines "stolen in the [July 2009] claim." (Doc. 54-3 at 72). Plaintiff acknowledged that this was "inconsistent" with what he told Ms. Kratzke during his recorded statement. (*Id.*). Plaintiff asserted that

---

[12] The record constructed by Plaintiff is brief. It was comprised of only a short statement of facts in opposition and Plaintiff's affidavit. The Court turned to the record constructed by Hartford to closely examine excerpts of Hartford's investigation, several depositions, and Plaintiff's EUO to determine whether a genuine issue of material fact existed.

his "witnesses" could "confirm that [he] owned these items in July of 2009." (*Id.* at 73). The record is unclear as to who exactly these witnesses are, but Plaintiff mentions his "brother Robin," "Laurie," "Ron," "and his girlfriend, Sonya."[13] (*Id.*) In any event, the record does not include any testimonial evidence from any of these witnesses to support Plaintiff's claim that he owned these items in July of 2009.

Finally, Plaintiff failed to produce any kind of documentation to establish ownership—when he purchased the figurines, where he purchased the figurines from, and how much he paid for them. Plaintiff appears to have stated that be bought the figurines "from a fellow out in Sun Lakes" three to four years prior to his EUO. (Doc. 54-3 at 72). This claim is unsubstantiated by the record. Further, while Plaintiff stated that his father brought figurines back from Europe for both Plaintiff and his brothers, the record offers no explanation as to what figurines Plaintiff's brother had or how both Plaintiff and his brother came to acquire several identical figurines. The record also lacks evidence to substantiate Plaintiff's claim that he purchased additional figurines between 2003 and 2009. The only documentary evidence the record contains is printed out images of some figurines, but these images are merely stock photographs and on-line advertisements, and they do not appear to be of the figurines that Hartford alleged were misrepresented. (Doc. 54-3 at 19-29). Ms. Kratzke alluded to "photographs" taken of figurines in Plaintiff's house during her deposition, but none were included in the record.

Plaintiff's position amounts to an unsupported declaration that the Court should trust him when he claims that the alleged duplicate items were in fact replacements because these figurines "would be readily available and attainable" by him. (Doc. 58 at 4). But even this declaration is unsupported by any evidence that the figurines could be obtained with ease and paid for in cash without any proof of purchase. Such a bare declaration unsupported by the record is not sufficient "evidence from which a jury might return a verdict in [his] favor." *Suzuki Motor Corp. v. Consumers Union of United States*,

---

[13] The witnesses are not parties to the suit, and not central to the Court's analysis. The Court will therefore refer to these individuals by their first names only.

*Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003) (citation omitted).

The Court is keenly aware of the modest burden that Plaintiff is under to resist a motion for summary judgment, and that generally, the "subjective intent of the insured" is a "question of fact to be determined after listening to . . . testimony." *Farmers Ins. Co. v. Vagnozzi*, 675 P.2d 703, 709-10 (Ariz. 1983). Nonetheless, Plaintiff's conclusory assertion unsupported by either fact or evidence "does not present an adequate record to support a finding in his favor," *Continental Maritime of San Francisco, Inc.*, 817 F.2d at 1393 (citation omitted), and no genuine dispute as to whether Plaintiff intentionally misrepresented the material[14] loss of eight duplicate figurines—worth $16,990—exists. Hartford is entitled to summary judgment on Plaintiff's breach of contract claim.

**B.    Plaintiff's Unjust Enrichment Claim**

The Court next addresses Hartford's penultimate claim: that it is entitled to summary judgment on Plaintiff's alternative claim of unjust enrichment. Unjust enrichment is an equitable cause of action that lies where a party lacks a remedy provided by law. *See Freeman v. Sorchych*, 245 P.3d 927, 937 (Ariz. Ct. App. 2011) (citing *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 1131-32 (Ariz. Ct. App. 1984)) (noting that "[t]o recover under a theory of unjust enrichment, a plaintiff must

---

[14] The Court is cognizant of the fact that Plaintiff claimed to have stolen 465 items that amounted to a total of $463,149 in losses, (Doc. 54 at 2-3), and at issue is a total of eight items worth $16,990. But even assuming Plaintiff contested materiality, the Court concludes that this alleged misrepresentation is material as a matter of law. Hartford asserted that Plaintiff intentionally misrepresented the loss of eight figurines, previously claimed as stolen, worth $16,990. (Doc. 54-3 at 4). "Whether a false statement is material depends upon "its prospective reasonable relevance to the insurer's inquiry." *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (citing *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1416 (Cal. App. Ct. 1988)). "If an insured's misrepresentation 'concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented, then it is material." *Id.* (citing *Cummings*, 202 Cal. App. 3d at 1417); *see also Warkentin v. Federated Life Ins. Co.*, No. 1:10-CV-002210SAB, 2015 U.S. Dist. LEXIS 64108, at *24 (E.D. Cal. May 15, 2015) (citation omitted) (noting that with respect to materiality the "critical question is the effect truthful answers would have had on the insurer"). The Court concludes that reasonable minds "could not disagree" on whether the misrepresentation of $16,990 worth of claimed losses "concerns a subject reasonably relevant to the insured's investigation" and that a "reasonable insurer would attach importance to the fact misrepresented." *Ram*, 807 F. Supp. 2d at 853.

demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law"). Hartford acknowledges that a contract governs the relationship between the parties, and argues that Plaintiff has no viable unjust enrichment claim. *See McNutt v. Key Fin. Corp.*, No. 9-CV-01847-PHX-ROS, 2012 U.S. Dist. LEXIS 95291, at *7 (D. Ariz. Sept. 9, 2010) (quoting *Brooks v. Valley Nat'l Bank.*, 548 P.2d 1166, 1171 (Ariz. 1976)) (noting that "[w]here 'there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application'"). Plaintiff agrees that "this claim is no longer necessary." (Doc. 58 at 9). Hartford is entitled to summary judgment.

## IV.    Hartford's Fraud Counterclaim

The Court has concluded that Hartford is entitled to summary judgment with respect to both Plaintiff's breach of contract and unjust enrichment claims. The Court nextaddresses Hartford's final contention, that it is entitled to summary judgment on the counterclaim of fraud it brought against Plaintiff. (Doc. 53 at 14).

"To prevail on a fraud claim under Arizona law, a claimant must show (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) his consequent and proximate injury." *Bean v. Pearson Educ., Inc.*, 949 F. Supp. 2d 941, 950 (D. Ariz. 2013) (citation omitted); *see also Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982). Each element must be "proven by clear and convincing evidence." *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. Ct. App. 1998) (citation omitted).

In light of the Court's grant of summary judgment for Hartford on Plaintiff's breach of contract claim, the record establishes that—as a matter of law— Plaintiff made one material, intentional misrepresentation to Hartford during the course

of its investigation: the claimed loss of $16,990 in figurines that had been previously claimed as stolen. To satisfy the remaining elements of fraud—namely reliance and damages—Hartford argues that Plaintiff "cannot plausibly claim that an insurance company does not rely or is not entitled to rely on representations about property made by an insured" and that it "suffered damages in the form of attorneys' fees it incurred to fully assess Thompson's fraud and take his EUO." (Doc. 53 at 14-15).

The Court finds that Hartford's assertion that it is "entitled to rely on representations about property made by an insured" to be insufficient to establish by clear and convincing evidence that it relied on a material misrepresentation made intentionally by Plaintiff. Moreover, Hartford has not pointed to Plaintiff's misrepresentation regarding the duplicate figurines as being any kind of trigger for Hartford's enhanced scrutiny of Plaintiff's claim. As discussed *supra*, a genuine dispute exists with respect to all of Hartford's alleged material misrepresentations, save for the claim of eight duplicate figurines worth $16,990. Hartford's alternative grounds to establish reliance are that it had to refer the claim to its Special Investigative Unit, and had to bring in coverage counsel to conduct an EUO, and had to determine the extent of Plaintiff's alleged fraud. The record does not demonstrate that Plaintiff's "duplicate claims" misrepresentation triggered these actions. Hartford itself asserts that when Plaintiff filed his claim, a number of "red flags" led Hartford to assign the claim to its "Special Investigation Unit." (Doc. 53 at 6). These red flags included the age of the policy, the escalation of value in Plaintiff's claimed losses, Plaintiff's prior insurance claims, Plaintiff's "changed . . . story," and the "suspicious" and "unusual" types of items claimed. (*Id.*). Moreover, Hartford's internal report—filed on December 16, 2009 after Ms. Kratzke's first interview with Plaintiff—bears out the concerns that triggered Hartford's enhanced scrutiny. (Doc. 54-3 at 6). Hartford expressed concern over "inconsistencies surrounding the prior thefts with American Family and him advising me that no personal property was stolen," as well as "the insured claims many similar tools and scaffold" as were claimed in the police report for the 2007 Flagstaff break-in. (Doc. 54-3 at 6). Finally, excerpts

from Plaintiff's December 16, 2009, recorded statement show that Hartford had concerns over the claimed loss of the crystal chandelier, as well as the three "Crumbo" watercolors. (Doc. 54-3 at 48, 49, 51-52).

In sum, the record does not establish that Hartford relied on Plaintiff's representation concerning the duplicate figurines to trigger its alleged "damages." Additionally, Hartford has failed to offer any support to its blanket argument that an insurance company is simply "entitled to rely on [an insured's] representations." It follows that Hartford is not entitled to summary judgment on its fraud counterclaim.

## V.   Conclusion

Based on the aforementioned analysis, the Court concludes the following: (1) Hartford is entitled to summary judgment on Plaintiff's breach of contract claim; (2) Hartford is also entitled to summary judgment on Plaintiff's alternative claim of unjust enrichment; and (3) Hartford is not entitled to summary judgment on its fraud counterclaim. The fraud counterclaim will therefore be tried before the Court in accordance with Fed. R. Civ. P. 39(b). *See Eaton Veterinary Labs.*, *Inc. v. Wells Fargo Merch. Servs.*, *LLC*, 2007 WL2174990, at *2 (D. Ariz. July 26, 2007) (noting that when the parties fail to demand a jury trial in accordance with Fed. R. Civ. P. 38(b) the case will be tried before the Court).

Accordingly,

/

/

/

/

/

/

/

/

1    **IT IS ORDERED** that Hartford's Motion for Summary Judgment (Doc. 53) with

2    respect to Plaintiff's claim for breach of contract is GRANTED.

3    **IT IS FURTHER ORDERED** that Hartford's Motion for Summary Judgment

4    (Doc. 53) with respect to Plaintiff's claim for unjust enrichment is GRANTED.

5    **IT IS FURTHER ORDERED** that Hartford's Motion for Summary Judgment

6    (Doc. 53) with respect to Hartford's counterclaim of fraud against Plaintiff is DENIED.

7    Dated this 16th day of December, 2015.

8

9

10

11                                              James A. Teilborg
                                      Senior United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28